FILED

2012 Sep-06  PM 03:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

STRATEGIC WELL-SITE MATERIALS
& LOGISTICS, LLC,

      PLAINTIFF,

vs.                                          CASE NO. CV 12-J-1132-NW

FRAC MASTER SANDS, LLC
n/k/a FMS TECHNOLOGICAL
SYSTEMS, LLC, et al.,

      DEFENDANTS.

## MEMORANDUM OPINION

Pending before the court is plaintiff Strategic Well Site Materials & Logistics LLC's motion for summary judgment and brief in support (doc. 32), defendants' Frac Master Sands LLC, Billy Kidd, Sr., and Billy Kidd, Jr.'s opposition thereto (doc. 39), and plaintiff's reply (doc. 41).  Plaintiff alleges eleven counts in its Complaint (*see* docs. 1 & 35) but moves for summary judgment only on one: Breach of Contract (Count V).

## Factual Background

On or about April 12, 2011, Frac Master Sands, LLC, ("FMS") and Strategic Well-Site Materials and Logistics, LLC. ("Strategic Well-Site") entered into an agreement for the purchase of silica sand (the "Agreement").  (Pl.'s Ex. 2 (doc. 32) at 1).  Pursuant to the terms of the Agreement, Strategic Well-Site provided FMS with

a prepayment in the amount of four million dollars ($4,000,000).  (Pl.'s Ex. 2 (doc. 32) at 4).  This Prepayment entitled Strategic Well-Site to a credit towards its purchase of sand.  (Pl.'s Ex. 2 (doc. 32) at 4).  Strategic Well-Site wired FMS a payment of $1,500,000 on April 8, 2011 and a payment of $2,500,000 on May 9, 2011, totaling $4,000,000.  (Pl.'s Ex. 3 (doc. 32))

FMS notified Strategic Well-Site that it would not be able to deliver sand by the Agreement's original August 1, 2011 start date in April 2011.  On May 7, 2011, Strategic Well-Site, FMS and Billy Kidd, Sr. executed a First Amendment to the Sand Purchase Agreement (the "Amendment").  (Pl.'s Ex. 4 (doc. 32) at 1).  Section 1.4 of the Agreement and Section 1.5 of the Amendment to the Agreement provided that the Agreement could be terminated if FMS did not provide sand to Strategic Well-Site by October 1, 2011.  FMS failed to provide sand to Strategic Well-Site by October 1, 2011.  (Def.s' Ex. B (doc. 39); *see also* Def.s' Resp. (doc. 39) at 4).  On October 18, 2011, Strategic Well-Site sent a written demand to FMS requesting the return of the four million dollar prepayment and providing written notice that the Agreement was terminated.  (Pl.'s Ex. 5 (doc. 32)).  FMS has not returned any portion of Strategic Well-Site's prepayment.  (Def. FMS' Ans. (Doc. 24) at ¶ 66).

## Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of

2

material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rules of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts" to meet their burden *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The non-movant must "demonstrate that there is indeed

a material issue of fact precluding summary judgment." *Clark v. Coates & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party when deciding motions for summary judgment. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All "reasonable doubts" about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987). "The moving party is entitled to 'judgment as a matter of law' when the nonmoving party fails to make a sufficient showing of an essential element of the case to which the nonmoving party has the burden of proof." *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987) (citing *Celotex*, 477 U.S. at 324).

There is a genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id*. at 249. "The basic issue before the court on a motion for

4

summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Nat'l Mining Ass'n v. Apfel*, 97 F. Supp. 2d 1070, 1076 (N.D. Ala. 1999) (quoting *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D. Ala. 1998)).  Summary judgment is appropriate where the moving party shows an absence of evidence to support an essential element of the nonmoving party's case. *Weiss v. School Board of Hillsborough County*, 141 F.3d 990, 994 (11th Cir. 1998).

## <u>Legal Analysis</u>

Plaintiff is entitled to summary judgment on its breach of contract claim if defendants have breached a written promise to repay plaintiff.  A Mississippi[1] plaintiff can establish a breach of contract claim by "proving by a preponderance of the evidence: 1. the existence of a valid and binding contract; and 2. that the defendant has broken, or breached it; and 3. that [plaintiff] has been thereby damaged monetarily."  *Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992) (citations omitted).  The parties agree that plaintiff has made a $4 million prepayment to FMS and that FMS has not returned the prepayment, thus, establishing potential damages. In order to prove its breach of contract claim, plaintiff must still show a valid contract

---

[1]The Agreement requires the use of Mississippi law.

5

and that defendants have breached that contract.

    I.  <u>Existence of a Valid and Binding Contract</u>

The parties entered into the Agreement on April 12, 2011, and created an Amendment to the Agreement on May 7, 2011.  Billy Kidd, Sr. ("Kidd") executed the Agreement and the Amendment on behalf of FMS as managing partner, and Ben Bodishbaugh ("Bodishbaugh") executed the Agreement and Amendment on behalf of Strategic Well-Site as executive vice-president of operations. Neither party disputes that there is a valid and binding contract between FMS and Strategic Well-Site.

Plaintiff contends that Kidd also entered into the Agreement in his personal capacity.   In support of its contention, Plaintiff submitted the affidavit of Bodishbaugh.  Bodishbaugh's affidavit affirmatively states that the Agreement and the Amendment were entered into by Strategic Well-Site, FMS, and Kidd.

Plaintiff also submitted copies of the Agreement and the Amendment to the Agreement.  (Pl.'s Ex. 2 & 4 (doc. 32)).  The opening paragraph to the Agreement states that Kidd is a party to the contract "solely for the purposes of <u>Section 12.10</u>." (Pl.'s Ex. 2 (doc.32) at 1).  Thus Kidd is a party to the contract for purposes of Section 12.10.  The Agreement, however, does not contain a Section 12.10.  The only reference in the Agreement to Kidd appears in Section 2.7 which states in part that

"Kidd unconditionally guarantees the performance of FMS's obligations under this Section 2.7 in accordance with, and subject to, the terms hereof."  (Pl.'s Ex. 2 (doc.32) at 4).

If not for the Amendment to the Agreement the discrepancy between the limitation in the opening paragraph to Section 12.10 and the language of Section 2.7 would cause a question of fact pertaining to Kidd's obligations.  The first paragraph of the Amendment states that it is entered into by FMS, Strategic Well-Site, and Kidd. (Pl.'s Ex. 4 (doc.32) at 1).  The second paragraph of the Amendment addresses the original Agreement by stating that "FMS, Strategic Well-Site, and Kidd entered into that certain Sand Purchase Agreement dated April 12, 2011. . . ."  (Pl.'s Ex. 4 (doc.32) at 1).  The Amendment in Section 1 rectifies the discrepancy in the original contract by stating that, "The Recitals of the Original Agreement are hereby amended by replacing the reference to 'Section 12.10' to the following: 'Section 2.7'".  (Pl.'s Ex. 4 (doc.32) at 1).  Kidd signed both the Agreement and the Amendment under a signature block for FMS and under a separate signature block reading "KIDD".  (Pl.'s Ex. 4 (doc.32) at 2).

Despite the ample evidence to the contrary, defendants continue to assert that there is a genuine dispute as to whether Kidd entered the agreement in his personal capacity.  Defendants have presented no evidence to support this assertion.  In fact,

an assertion that Kidd did not enter the Agreement and Amendment in his personal capacity is conspicuously absent from Kidd's affidavit.

"'In contract construction cases our focus is upon the objective fact–the language of the contract.  We are concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other.'" *Heritage Cablevision v. New Albany Elec. Power Sys. of City of New Albany*, 646 So. 2d 1305, 1313 (Miss. 1994) (quoting *Osborne v. Bullins*, 549 So. 2d 1337, 1339 (Miss. 1989)).  "[I]t is a question of law for the court to determine whether a contract is ambiguous and, if not, enforce the contract as written. Questions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder." *Royer Homes of Mississippi, Inc. v. Chandeleur Homes, Inc.*, 857 So. 2d 748, 751-52 (Miss. 2003) (internal citations omitted).  The original Agreement required Strategic Well-Site to provide FMS a $4 million prepayment that would be credited towards Strategic Well-Site's future purchases of sand.  Under the original agreement, FMS was to provide sand to Strategic Well-Site starting on August 1, 2011.  If FMS failed to provide sand by August 1, 2011, FMS was required to return the prepayment to Strategic Well-Site upon receiving written demand.

The parties executed an Amendment to the original Agreement to account for

a delay in FMS's delivery date.  The Amendment required FMS to provide sand by October 1, 2011, or return the prepayment upon written demand by Strategic Well-Site.  The Amendment also included language to clarify that the Agreement as Amended included Kidd's contractual obligation in Section 2.7 to "unconditionally guarantee[] the performance of FMS's obligations under this <u>Section 2.7</u> in accordance with, and subject to, the terms hereof." (*See* Pl.'s Ex. 4 (doc.32) at 1).

It is without question that the Agreement as Amended was entered into by FMS, Strategic Well-Site, and Kidd in his personal capacity.  Any ambiguity in the original agreement was resolved by the parties when they executed the Amendment to the Agreement.  The obligations of all three parties to the contract were defined: Strategic Well-Site was to make a prepayment of $4 million; FMS was to deliver sand by a date certain–October 1, 2011; and Kidd guaranteed the performance of FMS and the prepayment.

## II. Breach of Contract

As discussed above, FMS was required to begin to deliver sand on or before October 1, 2011.  If sand deliveries did not begin by that date, "upon written notice from Strategic Well-Site FMS shall return the Prepayment (or any Prepayment then remaining after offset in the amount of the credit to Strategic Well-Site for its Product purchases prior to such termination) to Strategic Well-Site within two (2) business

days." FMS admits in its answer that it did not deliver sand on October 1, 2011; it received a demand letter from Strategic Well-Site; and it has not returned any portion of the Prepayment to Strategic Well-Site. (*See* Def. FMS' Ans. (Doc. 24) at ¶¶ 27, 62 and 66). It therefore appears that defendant is in breach of its contractual obligations. Plaintiff also alleges that since Kidd is guarantor of the prepayment and because FMS did not return the Prepayment to Strategic Well-Site, Kidd is in breach of his obligation as guarantor of FMS' commitment to return the prepayment under Section 2.7 of the Agreement.

Defendants offer three arguments in response to plaintiff's breach of contract claim. Defendants first contention is that plaintiff expressly and by its conduct, amended the terms of the Agreement and rescinded the termination letter. Defendants are correct that Mississippi law recognizes that "A party to a contract who, after discovery or knowledge of facts which would entitle him to rescind, treats the contract as a subsisting obligation and leads the other party to believe that the contract is still in effect waives his right to rescind." *Matheney v. McClain*, 161 So. 2d 516, 519 (Miss. 1964).

Defendant asserts that a series of emails from Bodishbaugh to Kidd establish that Strategic Well-Site agreed to extend the sand delivery date and rescind the October 18, 2011 demand letter. Defendant quotes from a November 3, 2011, email

from Bodishbaugh stating: "We are drafting a 2nd amendment to the original contract that will set a new date for the commencement of commercial operations. This amendment will legally release you from the demand letter and the missed commercial date of October 1 as set in the 1st amendment." (Def.s' Ex. D (doc. 39) at 2). In support, defendants direct the court to *Tower Underwriters v. Culley*, 53 So. 2d 94, 96-97 (Miss. 1951) where the Court held that a party, who knowingly had a clear right to cancel a contract, waived its right to cancellation by sending a letter whereby it agreed to continue operating under the terms of original contract.

Upon a complete reading of Bodishbaugh's email, however, it becomes clear that Strategic Well-Site was attempting to negotiate a second amendment, with conditions precedent, to the original Agreement.  "A condition precedent has been defined as a 'condition which must be performed before the agreement of the parties shall become a binding contract or … a condition which must be fulfilled before the duty to perform an existing contract arises.'" *Austin v. Carpenter*, 3 So. 3d 147, 149-50 (Miss. Ct. App. 2009) (quoting *Turnbough v. Steere Broad. Corp.*, 681 So. 2d 1325, 1327 (Miss. 1996) (citations omitted)).  The offer of a second amendment and recision of the demand letter was made contingent upon the condition that FMS provide documents for a security arrangement in FMS' land and equipment and an accurate delivery date.  The email specifically states that Strategic Well-Site has

11

requested a security interest in land and equipment to ensure recoupment of its prepayment should FMS fail to perform under a second amendment.  (Def.s' Ex. D (doc. 39) at 2).

*Tower Underwriters* is therefore distinguishable from the case at hand.  In *Tower Underwriters* the party with a right to cancel agreed to operate under the terms of the original contract, here Strategic Well-Site offered to amend the original contract if FMS met certain conditions which included executing a security arrangement.  FMS made no effort to accept Strategic Well-Site's offer, therefore, there was no recision of the demand letter or second amendment.

It is completely reasonable that a business who has already paid $4 million dollars for services that were not performed may seek to obtain a security interest before pursuing available remedies in court.  Had Strategic Well-Site sought to continue under the original contract and waive its demand letter it would not have made its offer contingent upon FMS providing additional consideration.  The court finds that Strategic Well-Site did not waive its rights under the original contract by offering a potential amendment contingent upon FMS providing a security agreement in its land and equipment.  Finding otherwise would create a rule that discourages resolution of contract disputes outside the courtroom because a party would waive all remedies under the original contract if they attempted to negotiate an amendment.

The defendants next assert that there was no breach of contract because Section 8 of the contract is an excusable delay clause.  Defendants assert that FMS's failure to start delivery on October 1, 2011, is "because of the inclement weather, and political and environmental concerns being raised by the general public which led to problems obtaining necessary mining permits."   Def.s' Resp. (doc. 39) at 9. Defendants have also provided the affidavit of Kidd and emails between Kidd and Bodishbaugh to support that there were problems obtaining permits.

Mississippi law generally recognizes excusable delay clauses.  *See Paymaster Oil Mill Co. v. Mitchell*, 319 So. 2d 652 (Miss. 1975).   Defendants argument, however, ignores the addition of Section 6.3 by the Amendment to the Agreement. Section 6.3 provides, "In the event that the Start Date has not occurred by October 1, 2011, Strategic Well-Site may terminate this Agreement immediately upon written notice."

FMS admits that delivery did not start on October 1, 2011.  Strategic Well-Site terminated the agreement in writing on October 18, 2011, in accordance with Section 6.3.  Under Section 2.7, FMS must return any portion of the prepayment remaining upon termination of the Agreement.  Because FMS had yet to perform under the Agreement, it was contractually obligated to return the entire $4 million prepayment within two business days of the October 18, 2011, notice.  To date FMS has not

returned the prepayment, therefore, FMS is in breach of the Agreement.

Defendants' last argument is that even if FMS is in breach, Kidd did not provide a personal guarantee of the $4 million prepayment. The court has found that Kidd entered into the contract in his personal capacity. The defendants, however, assert that they did not draft the contract and the Agreement does not contain the language "personal guarantee." Under Defendants' theory the lack of the term "personal guarantee" should be construed against plaintiff, as drafter. Defendant is correct that neither the Agreement nor the Amendment contain the phrase "personal guarantee." The Agreement, however, does state that "Kidd *unconditionally guarantees* the performance of FMS's obligations under this <u>Section 2.7</u> in accordance with, and subject to, the terms hereof." (Pl.'s Ex. 2 (doc.32) at 4) (first emphasis added).

"The most basic principle of contract law is that contracts must be interpreted by objective, not subjective standards. A court must effect 'a determination of the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties.'" *Cherry v. Anthony, Gibbs, Sage*, 501 So. 2d 416, 419 (Miss. 1987) (quoting *Hunt v. Triplex Safety Glass Co.*, 60 F.2d 92, 94 (6th Cir. 1932)). Generally the court is "bound to enforce contract language as written and give it its plain and ordinary meaning if it is clear and unambiguous. *Anglin v. Gulf*

14

*Guar. Life Ins. Co.*, 956 So. 2d 853, 859 (Miss. 2007) (quoting *Mississippi Farm Bureau Cas. Ins. Co. v. Britt*, 826 So. 2d 1261, 1266 (Miss. 2002).

The court does not find the language ambiguous and thus will look to the plain meaning of the terms.  Unconditional is defined as "[n]ot limited by a condition; not depending on an uncertain event or contingency; absolute." BLACK'S LAW DICTIONARY (9th ed. 2009).  A guarantee is "[t]o assume a suretyship obligation; to agree to answer for a debt or default. . . .  To promise that a contract or legal act will be duly carried out." BLACK'S (9th ed. 2009).

As previously discussed, Kidd is a party to the contract in his personal capacity.  Therefore, the court finds that Kidd committed to a contractual obligation, not limited by a condition, to answer for a debt or default of FMS.  In this case the contract or legal act that FMS was to carry out and that Kidd agreed to answer for is an obligation to return the $4 million prepayment to Strategic Well-Site upon termination of the Agreement as Amended.  Strategic Well-Site terminated the contract within the terms of the Agreement as Amended.  Neither FMS nor Kidd returned the prepayment; therefore, FMS and Kidd are in breach.

## Conclusion

Having considered the foregoing and finding that defendants have failed to establish a genuine issue of material fact sufficient to allow this case to proceed to

trial on the breach of contract count (Count V), the court **FINDS** that plaintiff's motion for partial summary judgment (doc. 32) is due to be **GRANTED**, and the court shall so order by Separate Order.

      **DONE** and **ORDERED** this the 6th day of September 2012.

 

 

<u>                                                               </u>
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE